IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARQUITA V. MADISE,      *
                                *
     Plaintiff,       *
                                *
vs.                    *   CIVIL ACTION 08-00376-B
                                *
MICHAEL J. ASTRUE,      *
Commissioner of        *
Social Security,       *
                                *
     Defendant.       *

ORDER

Plaintiff Marquita V. Madise ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for period of disability, disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., and 1381 et seq.  On April 30, 2009, the parties consented to have the undersigned conduct any and all proceedings in this case.  (Doc. 14).  Thus, this case was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636( c) and Fed.R.Civ.P. 73.  (Doc. 15).  Oral argument was waived.  (Docs. 16, 17).  Upon careful consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

1

## I.   **Procedural History**

Plaintiff protectively filed an application for supplemental security income on November 18, 2005, and filed an application for disability insurance benefits on December 5, 2005.   In her applications, Plaintiff alleges that she has been disabled since December 3, 2004 due to degenerative disc disease, sciatica, and back problems.   (Tr. 54-56, 98-99, 273-276).   Plaintiff's applications were denied upon initial review, and she filed a timely Request for Hearing before an Administrative Law Judge. (Tr. 38-39, 40, 277-278).   On July 26, 2007, an administrative hearing was held before Administrative Law Judge Glay E. Maggard ("ALJ" or "ALJ Maggard").   The hearing was attended by Plaintiff, her representative and a vocational expert.   (Tr. 287-323).   On September 28, 2007, ALJ Maggard issued an unfavorable decision.   He concluded that Plaintiff is not disabled.   (Tr. 17-27).   The Appeals Council denied review of the ALJ's decision; thus, the ALJ's decision became the final decision of the Commissioner of Social Security.   (Tr. 6-8).   The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.   **Issue on Appeal**

A.   Whether the ALJ erred by failing to assign determinative weight to the opinion of Plaintiff's treating physician, and

instead adopting the findings of a physical therapist.

### III. __Factual Background__

Plaintiff was born on May 1, 1966 and was 41 years old at the time of the July 26th administrative hearing.  (Tr. 54, 273, 291). Plaintiff has a high school education, three years of college, and past relevant work ("PRW") as a personnel clerk, cashier, dry cleaner clerk, sales associate, cook/cashier, substitute teacher, sales agent and prep cook.  (Tr. 78, 105-106, 292, 311-314).  At the administrative hearing, Plaintiff testified that she stopped working as a prep cook for Applebee's on December 3, 2004 because she was injured in a fall at work[1].  (Tr. 294).  According to Plaintiff, she has been diagnosed with a herniated disc, a bulging disc, and she experiences burning and throbbing pain which starts in the middle of her back, and goes down her leg and into her toes. Plaintiff testified that her pain level is a nine, on a pain scale of one to ten, during four to five hours of every day.  (Tr. 296-298).

Plaintiff also testified that she occasionally does dishes, cooks for her children, and cares for her two-year-old child, including changing diapers and feeding the child.  She further

---

[1]According to Plaintiff, she was fired for missing too many days of work because of her back.  (Tr. 308-309).

testified that she is able to attend to her personal needs, that she has a driver's license and that she drove to the hearing. (Tr. 304). Plaintiff also testified that she sleeps an average of two and a half hours per night because of her pain, and that she is not able to sweep, mop, vacuum a floor or clean the bathtub. (Tr. 301).

In a Physical Activities Questionnaire dated May 7, 2005, Plaintiff reported that she cooks and prepares meals, performs household chores and loads and unloads groceries, but that these activities take longer because she has to take frequent breaks. Plaintiff also reported that she can care for her personal needs without assistance but that she sits down when she brushes her teeth, gets dressed and combs her hair. She further reported that she cares for her 10 year-old son by preparing his food, washing his clothes, taking him to school and helping him with his homework. According to Plaintiff, she can perform most activities for about 15 minutes, but must stop because of pain. (Tr. 87-91A).

## V. __Analysis__

### A. __Standard of Review__

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.

Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[2]  A court
may not decide the facts anew, reweigh the evidence, or substitute
its judgment for that of the Commissioner.  Sewell v. Bowen, 792
F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of
fact must be affirmed if they are based upon substantial evidence.
Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth
v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding
substantial evidence is defined as "more than a scintilla but less
than a preponderance" and consists of "such relevant evidence as a
reasonable person would accept as adequate to support a
conclusion[]").  In determining whether substantial evidence
exists, a court must view the record as a whole, taking into
account evidence favorable, as well as unfavorable, to the
Commissioner's decision.  Chester v. Bowen, 792 F.2d 129, 131 (11th
Cir. 1986); Short v. Apfel, 1999 U.S. Dist. Lexis 10163 (S.D. Ala.
1999).

B.  **Discussion**

An individual who applies for Social Security disability
benefits must prove his disability.  20 C.F.R. §§ 404.1512,
416.912.  Disability is defined as the "inability to do any
substantial gainful activity by reason of any medically

_____

[2]This Court's review of the Commissioner's application of
legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999
(11th Cir. 1987).

5

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[3]

In case sub judice, the ALJ determined that Plaintiff met the non-disability requirements for a period of disability and

---

[3]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

6

disability insurance benefits and was insured for benefits through December 31, 2009. (Tr. 22). The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. Id. The ALJ concluded that while Plaintiff has the severe impairment of degenerative changes of the lumbar spine, this impairment does not, individually or in combination, meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Tr. 22-23). The ALJ found that Plaintiff's allegations regarding her limitations were not credible as to a disabling impairment. (Tr. 26). The ALJ concluded that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of medium work, and is capable of performing her past relevant work as a reservation clerk, teacher, cashier, cook helper and office clerk. (Tr. 23, 26).

The relevant evidence of record reflects that Plaintiff was treated at South Baldwin Regional Medical Center on December 3, 2004 for injuries after a fall on a wet floor at work. Her physical exam was normal. She was diagnosed with back injury and was released. (Tr. 138-139).

Plaintiff was treated at Bayside Orthopaedic, Sports Medicine and Rehab Center ("Bayside") from December 8, 2004 to September 20, 2005. At Bayside, Plaintiff was evaluated by William A. Roberts, M.D., on December 8, 2004. Plaintiff reported pain in her low back

extending into her left lower extremity, and that the pain was more pronounced in her leg than in her back.  Her other symptoms were tingling sensations and sleep disturbances.  On physical exam, Plaintiff was tender to palpation in the lower lumbar spine, had no pain with range of motion of her hips, negative straight leg raising, and her sensory, motor and deep tendon reflexes of both lower extremities appeared normal.  Dr. Roberts noted that Plaintiff was 11 weeks pregnant, and diagnosed her with lumbago, lumbar sprain and strain and unspecified neuralgia, neuritis and radiculitis.  He also instructed Plaintiff to remain off work until her follow-up in four weeks.  (Tr. 180-181).

Plaintiff was seen by Dr. Roberts on December 29, 2004.  On physical exam, Plaintiff had negative straight leg raising, no focal motor weakness of either lower extremity, normal peroneal and ankle strength, no tenderness along thee course of the malleoli and excellent range of motion of her ankle.  Dr. Roberts diagnosed Plaintiff with lumbago, unspecified neuralgia, neuritis, and radiculitis, and lumbar sprain and strain, and noted that her symptoms had not improved.  He also noted that he had not placed Plaintiff on any medications, and that he would obtain an MRI scan of Plaintiff's lumbar spine if he secured clearance from her obstetrician.  (Tr. 178).  In a follow-up evaluation on January 26, 2005, Dr. Roberts examined Plaintiff, and his diagnosis remained the same.  He noted that he was releasing Plaintiff to return to

8

work in a sedentary position.  (Tr. 177).

Plaintiff's next follow-up with Dr. Roberts was on February 16, 2005.  Plaintiff reported that she was doing well working two to three hours per day. Plaintiff also reported increased pain in her back the prior week, with discomfort into her left leg, buttock and posterior thigh on the right.  On physical exam, Plaintiff had no pain with range of motion in her hips, her straight leg raising was negative, and the sensory, motor and deep tendon reflexes in her lower extremities appeared normal.  She was diagnosed with probable exacerbation of lumbar annular strain with persistent left lower extremity radiculitis, lumbago, unspecified neuralgia, neuritis, and radiculitis, and with lumbar sprain and strain.  Dr. Roberts noted that Plaintiff was 21 weeks pregnant, and that it "may be reasonable at this point to consider her being placed on maternity leave." (Tr. 176).  In a Work Injury Summary Evaluation Form completed on this date, Plaintiff was instructed to maintain light restrictions, and to consider being placed on maternity leave.  (Tr. 173).

During Plaintiff's February 28, 2005 visit, Plaintiff was given crutches and was trained on their use.  (Tr. 172).  Dr. Roberts informed Plaintiff that he could not perform treatment or diagnostic testing without a release from her obstetrician.  (Tr. 170).  In a Work Injury Summary Evaluation Form completed on this date, Plaintiff is instructed to maintain her present restrictions.

(Tr. 171).

The record reflects that Plaintiff had an open MRI on March 11, 2005. The MRI report listed a finding of severely degenerated L5-S1 disc with mild anterior subluxation[4] of L5 on S1.  It was also noted that no definite spondylolysis[5] was seen, but a protruding disc was observed at that level, a little greater to the left of the midline producing moderate spinal stenosis and moderate to severe bilateral foraminal stenosis.(Tr. 161, 169, 246).  In treatment notes dated March 25, 2005, Dr. Roberts observed that Plaintiff's MRI indicates an old grade I spondylolisthesis[6] of lumbosacral junction with a corresponding foraminal stenosis, and that there was no evidence of significant recent annular protrusion or other discogenic abnormality.  (Tr. 167).

Dr. Roberts opined that Plaintiff "is demonstrating foraminal stenosis due to her spondylolisthesis producing symptoms in her left leg."  Dr. Roberts further noted that clinically, Plaintiff was not demonstrating any progressive motor weakess, and he diagnosed her with lumbago, unspecified neuralgia, neuritis, and

---

[4]Subluxation is a partial dislocation of one of the bones in a joint.  See, www.nlm.nih.gov.  (Last visited May 28, 2009).

[5]Spondylolysis is the disintegration or dissolution of a vertebrae.  See, www.nlm.nih.gov.  (Last visited June 1, 2009).

[6]Spondylolisthesis is the forward displacement of a lumbar vertebrae on the one below it, producing pain by compression of the nerve roots.  See, www.nlm.nih.gov.  (Last visited June 1, 2009).

radiculitis, and with lumbar sprain and strain.  He opined that Plaintiff was not a candidate for surgery due to her pregnancy, and noted that if Plaintiff's leg pain became severe, an epidural steroid injection could be considered if she had clearance from her obstetrician.  (Tr. 167). In a Work Injury Summary Evaluation Form completed on this date, Plaintiff was instructed to maintain her present restrictions.  (Tr. 168).

Plaintiff returned to Dr. Roberts for follow-up on May 18, 2005.  On physical exam, Plaintiff had mildly tender low back and no pain with range of motion of her hips.  Her straight leg raising was negative, and her sensory, motor and deep tendon reflexes of both lower extremities were normal.  (Tr. 166).  A nurse's note dated June 1, 2005 reflects that Plaintiff continued to be limited to sedentary work.  (Tr. 165).

Plaintiff was referred to J. Markus Carter, D.O., at the Bayside Physical Medicine Department on August 9, 2005.  Plaintiff reported having left-sided low back pain, which later progressed to the right side of her back following a fall at work.  Plaintiff also reported that she had received conservative treatment due to her pregnancy and toxemia after the pregnancy.  Plaintiff further reported that was terminated after attempting to return to work in March.  (Tr. 160).

On physical exam, Dr. Carter noted palpatory tenderness over the bilateral L5 paraspinal muscles with provocation of symptoms

11

noted on lumbar extension at 10 degrees and lesser provocation of symptoms noted on lumbar forward flexion at 40 degrees.  He further noted that Plaintiff's straight leg raising was negative, that she was without Patrick's[7] or Homans sign[8], that her gait was nonantalgic, she had no foot drop, and that she was able to climb up and down from the exam table without difficulty.  Her motor exam was 5/5 for the remaining major muscle groups of the bilateral lower extremities.   The remainder of her sensory exam was unremarkable for both lower extremities, and the remainder of muscle stretch reflexes was unremarkable for both lower extremities.  She had no Babinski, clonus, cross leg, bow string or straight leg raising dural tension signs, and the remainder of her spinal range was unremarkable.   She had no additional muscular tendinous ligamentous or bony tenderness and no additional somatic joint dysfunction.  (Tr. 160-161).

Dr. Carter diagnosed Plaintiff with accident-related lumbar sprain/strain with soft tissue myalgia; non-accident-related severe L5-S1 degenerative disc disease; non-accident related grade I L5-S1 spondylolisthesis – degenerative; L5-S1 disc protrusion with bilateral foraminal stenosis, intermittent bilateral sciatica,

---

[7]Patrick's test is a test for arthritis in the hip.  See, www.medical-dictionary.thefreedictionary.com/test. (Last visited May 28, 2009).

[8]Homans sign is a test for thrombosis in the calf veins. See, www.medical-dictionary.thefreedictionary.com/test. (Last visited May 28, 2009).

right greater than left; co-morbidity including hypertension; toxemia of pregnancy; lumbago; unspecified neuralgia; neuritis; radiculitis; and lumbar sprain and strain.  He restricted Plaintiff to light duty work restrictions with no lifting more than 20 pounds and avoiding repetitive bending and twisting at the waist with frequent change of position.  (Tr. 162-163).

A Bayside Work Injury Summary Evaluation Form dated August 9, 2005 reflects that Plaintiff's diagnosis of lumbar sprain is unchanged, that she has been treated with physical therapy, a lumbar brace, and Ultracet[9], and that she could return to light duty on August 9, 2005.  (Tr. 164).

An office note from Dr. Carter dated September 20, 2005 reflects that Plaintiff reported continuing low back pain and right leg sciatica.  Plaintiff also reported that she was attending physical therapy and that she felt slightly improved.  On physical exam, Plaintiff's her muscle stretch reflexes were 2/4 and symmetrical for knees and ankles, and she had tenderness over the bilateral L5 paraspinal muscles with provocation of symptoms on lumbar extension at 10 degrees.  The remainder of the exam was unremarkable, and Dr. Carter's diagnosis remained the same.  Dr. Carter referred Plaintiff to a local neurologist for electromyographic examination ("EMG") and nerve conduction studies

_____

[9]Ultracet is a pain reliever used to treat moderate to severe pain.  See, www.drugs.com.  (Last visited May 29, 2009).

("NCS") electrodiagnostic testing of lower extremities.  He also recommended that she follow up with a spine surgeon, and noted that if no surgery was recommended, she should see Dr. Hankins for pain management.  He also instructed Plaintiff to continue physical therapy and in her "off-work" status until she met with the spine surgeon, Dr. Paul Canale. He also continued her on Ultracet.  (Tr. 154-155).

A Bayside Work Injury Summary Evaluation Form dated September 20, 2005 notes that Plaintiff's status had improved.  Plaintiff was diagnosed with lumbar strain, spondylolisthesis and sciatica, and was instructed to stay off work.  Plaintiff was also instructed to continue physical therapy and to undergo EMG NCS nerve studies on both legs. (Tr. 156).

Plaintiff was evaluated by Paul B. Canale, M.D., at Baldwin Bone and Joint on November 14, 2005.  Dr. Canale noted that Plaintiff's physical exam revealed normal stance and gait, and symmetrical standing posture.  He also noted that plain radiographs of Plaintiff's spine showed large, bird-beak osteophytes projecting anteriorly from anterior inferior L5 and superior M-plate of S1. He further noted marked disc space narrowing.  Dr. Canale diagnosed Plaintiff with end stage degenerative disc disease, L5-S1 with radiculopathic symptoms and associated lower back pain.  He opined that Plaintiff has a degenerative condition that predates her fall at work.  Dr. Canale also opined that Plaintiff's chronic lower

14

back condition was aggravated by her fall at work. Dr. Canale suggested that Plaintiff be referred to pain specialist Dr. Hankins for a non-operative treatment regimen. (Tr. 188-189).

A Physical Residual Functional Capacity Assessment was completed at the request of the Agency by Charles Crump, M.D. on June 8, 2005. Dr. Crump opined that Plaintiff is limited to lifting/carrying 50 pounds occasionally and 25 pounds frequently, standing/walking/sitting about six hours in an eight-hour workday, and is unlimited in pushing/pulling hand and/or foot controls. He further opined that Plaintiff is limited to occasional stooping, and frequent climbing, balancing, kneeling, crouching and crawling. According to Dr. Crump, Plaintiff has no manipulative, visual, communicative or environmental limitations. (Tr. 144-152).

Plaintiff began treatment at the Mobile County Health Department ("MCHD") on September 19, 2005. Office notes reflect that Plaintiff reported that she was out of her blood pressure medicine, and that her blood pressure was elevated. Plaintiff was prescribed Labetalol. (Tr. 206). Plaintiff was next seen at the MCHD on October 4, 2005. She reported that she had been experiencing constant low back pain since she fell in December of 2004. Plaintiff also reported numbness and tingling down her legs. She was diagnosed with hypertension and back pain. Her blood pressure medication was changed to hydrochlorothiazide ("HCTZ"),

and she  was prescribed Norvasc[10], Accupril[11], Flexoril[12], Ultram[13], Voltaren[14] and Elavil[15].  (Tr. 204-205).  Plaintiff was next treated at MCHD on on November 4, 2005 for a blood pressure check.  She reported continued pain.  Plaintiff's Accupril was discontinued, and she was continued on Norvasc. (Tr. 202-203).  During a follow-up visit on to MCHD on December 22, 2005, Plaintiff reported that her back pain was better.  She was prescribed. Lodine[16].  (Tr. 208).

Plaintiff's next treatment at MCHD was on May 17, 2006.  She reported back pain.  Her exam was normal, and she was diagnosed with diabetes mellitus, hypertension and back pain.  She was instructed to resume Accupril and reduce Norvasc.  (Tr. 200-201).

---

[10]Norvasc is a calcium channel blocker used to treat hypertension.  See, www.drugs.com.  (Last visited May 30, 2009).

[11]Accupril is an ace-inhibitor used to treat hypertension. See, www.drugs.com.  (Last visited May 30, 2009).

[12]Flexoril is a muscle relaxant that works by blocking nerve impulses.  See, www.drugs.com.  (Last visited May 30, 2009).

[13]Ultram is a narcotic-like pain reliever used to treat moderate to severe pain.  See, www.drugs.com.  (Last visited May 30, 2009).

[14]Voltaren is a non-steroidal anti-inflammatory drug ("NSAID") used to treat inflammation, stiffness, swelling and joint pain.  See, www.drugs.com.  (Last visited May 30, 2009).

[15]Elavil is an anti-depressant used to treat depression. See, www.drugs.com.  (Last visited May 30, 2009).

[16]Lodine is an NSAID used to treat inflammation, swelling, stiffness and joint pain.  See, www.drugs.com.  (Last visited May 30, 2009).

Plaintiff was next seen at MCHD on June 12, 2006. She had no complaints. She was diagnosed with diabetes mellitus and hypertension, and was instructed to discontinue Norvasc. (Tr. 198-199).

Office notes from Dr. Afzal at MCHD dated November 3, 2006 reflect that Plaintiff was prescribed Lotensin[17]. (Tr. 215). Plaintiff was treated by Dr. Afzal on December 7, 2006. She reported pain in her low back. Dr. Afzal observed that Plaintiff's pain was localized to one or more joints in her back, and that she was doing well with her medications. Dr. Afzal further noted that Plaintiff's physical exam was normal, and prescribed Gabapentin[18] and Salsalate[19]. (Tr. 213-215). During her June 8, 2007 visit to MCHD, Plaintiff reported uncontrolled bladder and bowel, and lower back pain with numbness in her right leg at times. She was referred for an MRI of the lumbo-sacral spine. (Tr. 259-261).

Plaintiff was next seen at MCHD on July 3, 2007. The treatment notes reflect that Plaintiff denied any complaints during her July 3rd visit. Dr. Afzal noted that Plaintiff has a history

---

[17]Lotensin is a drug used to treat hypertension. See, www.drugs.com. (Last visited June 1, 2009).

[18]Gabapentin is an anti-seizure medication also used to treat nerve pain. See, www.drugs.com. (Last visited June 1, 2009).

[19]Salsalate is an anti-inflammatory used to treat pain and inflammation. See, www.drugs.com. (Last visited June 1, 2009).

of pain, which is controlled with medication, and which limits her activity.  Her physical exam was normal.  (Tr. 258-259).

In a Clinical Assessment of Pain Form dated July 3, 2007, Afzal Kamran, M.D., who treated Plaintiff at MCHD beginning in September 2005, opined that Plaintiff has a bulging disk that is the underlying cause of her pain; that her pain will distract her from adequately performing daily activities or work; that physical activity will greatly increase her pain and cause distraction from task or total abandonment of task; and that her pain and/or the side effects of her medication can be expected to be severe and to limit her effectiveness due to distraction, inattention, or drowsiness.  He further noted that Plaintiff had not been prescribed narcotic pain medication; that she would receive treatment for chronic pain management over the next year; that she is restricted from heavy lifting; and that her pain has been at this level for two years.  (Tr. 250-251).

Plaintiff was seen by Dr. Asghar at Stanton Road Clinic on July 12, 2007, on referral from Dr. Afzal.  Dr. Asghar's opined that Plaintiff has bilateral radiculopathy at L5-S1 with increased disc protrusion over years, causing spinal cord compression, which is not acute at this point.  (Tr. 264-265).

HealthSouth Physical Therapist Ernest J. McCormick performed

a Functional Capacity Evaluation on December 14, 2006[20]. He opined that Plaintiff could lift up to 40 pounds frequently, could carry up to 30 pounds frequently and 40 pounds occasionally, and could push/pull up to 40 pounds frequently. He also opined that she could sit 30 minutes at a time, stand 60 minutes total and walk 40 minutes total. Mr. McCormick further opined that Plaintiff could climb stairs, balance, stoop, kneel, crouch and crawl frequently, but could not climb ladders.

According to Mr. McCormick, Plaintiff could do sustained frequent overhead and desk level reaching, and could do frequent firm and simple grasping and fine motor fingering on the right and left. (Tr. 218). Mr. McCormick noted that Plaintiff complained of pain with palpation of the lumbo-sacral junction, but could tolerate deep pressure without withdrawing to pain. He also noted that her flexibility was normal except for moderately tight hamstrings on the left, and that she had 5/5 strength for bilateral upper and lower extremities, 2+ reflexes for bicep, tricep, achilles, and patellar deep tendon reflexes bilaterally. He noted that Plaintiff complained of numbness, but had sensation to light touch. (Tr. 220). Mr. McCormack noted further that Plaintiff did not complain of back pain except for the pain rating at the beginning and termination of testing. He noted good speed with

---

[20]Mr. McCormick's evaluation reflects that Plaintiff was referred by Dr. Afzal.

transition from sitting to supine and vice versa without an observable wince or complaint.  (Tr. 221).

Mr. McCormick concluded that Plaintiff was able to occasionally lift 40 to 50 pounds, and could sit, stand, walk, do repetitive and sustained desk level reaching, sustained desk level reaching, floor level reaching, regular stairs, overhead reaching, kneeling, crouching, crawling and stooping on a frequent basis.  He further stated that Plaintiff could perform work at the medium level of exertion[21], that is, that she was capable of exerting up to 20 pounds of force occasionally, and up to 25 pounds of force frequently, and up to 10 pounds of force constantly to move objects.  (Tr. 216).

An MRI of the lumbo-sacral spine dated July 27, 2007 resulted in a finding of anterior listhesis of L5 with respect to S1 with concurrent broad-based bulge and facet hypertrophy culminating in advanced narrowing of the bilateral neural foramina and compression of the bilateral dorsal root ganglion at L5/S1.  It also showed a mild broad-based bulge at T11/12 with minimal mass effect on the anterior thecal sac.  In addition, the T11/12 vertebral bodies demonstrated edema consistent with modic type 1 changes.  Finally it showed an annular tear of the L4/5 disc.  (Tr. 256-257).

---

[21] Mr. McCormick states that this exertion level is as defined by the U.S. Department of Labor, Dictionary of Occupational Titles.  (Tr. 216).

1.    **Whether the ALJ erred by failing to assign determinative
      weight to the opinion of Plaintiff's treating physician,
      and instead adopting the findings of a physical
      therapist**.

In the case <u>sub judice</u>, Plaintiff argues that the ALJ erred in

failing to give controlling weight to the opinion of Dr. Afzal,

Plaintiff's treating physician, and by assigning greater weight to

the Functional Capacity Evaluation done by a physical therapist.

Defendant argues that the ALJ had good cause for discrediting the

opinion of Dr. Afzal because it is based primarily upon Plaintiff's

subjective complaints, it is inconsistent with his own treatment

notes, it is not supported by objective medical findings and is

contradicted by the opinions of Dr. Crump and Mr. McCormick that

Plaintiff could perform medium work.  Defendant further argues that

opinions regarding whether a Plaintiff is disabled are to be

determined by the ALJ.

In determining what weight to assign the opinion of Dr. Afzal,

the ALJ states as follows:

> As for the opinion evidence, only the questionnaire
> completed by Dr. Afzal provides any support for the
> claimant's allegation of disability, and that
> questionnaire was internally inconsistent, with him
> specifically commenting that, with respect to daily
> activities to be avoided, she should avoid heavy lifting.
> A report, dated February 28, 2007, from a vocational
> specialist to the claimant's Worker's Compensation
> attorney reported the "salient restriction" was a
> limitation to lifting no more than 40 pounds, which is
> consistent with a range of medium work . . . . As early
> as August 2005, well within 12 consecutive months of the
> alleged onset date, Dr. Roberts described the claimant as

21

capable of lifting objects weighing 20 pounds, with no repetitive bending or twisting at the waist, and with the opportunity to frequently change her position. The functional capacities evaluation concluded that the claimant could sustain medium work. Based on the totality of the record, the Administrative Law Judge finds that the limitations described in the functional capacities evaluation are most appropriate in this case because that evaluation was based on actual observation of the claimant, the medium level of exertion described in that report is essentially consistent with the written report from the vocational specialist to the claimant's Worker's Compensation attorney, and it is even supported by the comment by Dr. Afzal that the claimant should not perform heavy lifting."

(Tr. 26).

Case law provides that the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." "Good cause" exists where: 1) the opinion was not bolstered by the evidence; 2) the evidence supported a contrary finding; or 3) opinion was conclusory or inconsistent with the doctor's own medical records. <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1340-41 (llth Cir. 2004); <u>See</u> also <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583 (11th Cir. 1991); <u>Sabo v. Commissioner of Social Security</u>, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); and 20 C.F.R. § 404.1527(d). <u>See also</u> <u>Johnson v. Barnhart</u>, 2005 WL 1414406, *2 (11th Cir. Jun. 17, 2005); <u>Wind v. Barnhart</u>, 2005 WL 1317040, *6 (11th Cir. Jun. 2, 2005) (citing to <u>Crawford v. Comm'r of Social Security</u>, 363 F.3d 1155, 1159 (11th Cir. 2004)) <u>Johnson</u>, 2005 WL 1414406, *2; <u>Wind</u>, 2005 WL 1317040, *6.

"The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error[;]" likewise, he commits error if he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians absent good cause. (Id.) Of course, it is the ALJ's duty, as finder of fact, to choose between conflicting evidence and he may reject the opinion of any physician when the evidence supports a finding to the contrary. (Id.) (citing to Landry v. Heckler, 782 F.2d 1551, 1554 (11th Cir. 1986) and Bloodsworth v. Bowen, 703 F.2d 1233, 1240 (11th Cir. 1983).[22]

Upon a careful review of the record evidence, the undersigned finds that the ALJ correctly discredited the opinion of Dr. Afzal because it is inconsistent with his own treatment notes, and because the evidence supported a contrary finding. Dr. Afzal's opinion expressed in the pain assessment is inconsistent with his treatment notes, and in fact contradicts them. In the July 2007 pain assessment, Dr. Afzal opines that, since July 2005,

---

[22]See also Blake v. Massanari, 2001 WL 530697, *10 n.4 (S.D. Ala. Apr. 26, 2001); 20 C.F.R. § 404.1527(d)(2). The Eleventh Circuit has repeatedly made clear that the opinion of a treating physician must be given substantial weight unless good cause is shown for its rejection. See, e.g., Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir. 1987); Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984); and 20 C.F.R. § 404.1527(d)(2).

Plaintiff's pain has been such that it would distract her from adequately performing daily activities or work, and that physical activity greatly increases her pain and causes distraction from task or total abandonment of task, restricting her to "no heavy lifting." Dr. Afzal's treatment notes dated September 2005 and June 2006 indicate that Plaintiff did not complain of back pain at all, and on all but one occasion between September 2005 and June 12, 2006, her musculoskeletal exam was normal. In fact, on the one occasion that pain was noted on physical exam, Dr. Afzal did not indicate that Plaintiff's pain was constant, but that Plaintiff experienced pain in her back when she leaned forward or rotated back and forth. (Tr. 198-207). Also noteworthy is the office note dated December 7, 2006, in which Plaintiff reported that her back pain was doing well on medication, and Dr. Afzal reported that Plaintiff's neurological exam was normal. (Tr. 213-214). Likewise, Dr. Afzal's treatment notes dated June and July of 2007 lack any report that Plaintiff experienced the kind of pain indicated in his July 2007 pain assessment. (Tr. 198-201, 258-263). Plaintiff presented in June 2007 with complaints of back pain, but Dr. Afzal notes that she was in no acute distress, and that her neurological exam was normal. Dr. Afzal notes that when she returned in July 2007, she denied complaints and he observed again that she was in no acute distress, and that her neurological exam was normal. (Tr. 258-261).

Absent from Dr. Afzal's treatment notes is any indication that Plaintiff had a limitation on her ability to lift heavy things, that her pain was so intense that she could not perform her daily activities or could not work, that her physical activity caused an increase in her pain such that she was distracted or had to abandon tasks, or that she suffered adverse side effects of her medications.

Dr. Afzal's opinion is also contradicted by the record as a whole, and particularly by Plaintiff's assertions in the Physical Activities Questionnaire she completed on May 7, 2005, by her testimony at the July 26, 2007 administrative hearing, by the treatment notes of Drs. Roberts, Carter, Canale and Crump, and by the functional assessment of physical therapist McCormick.  Dr. Afzal opined that Plaintiff's pain is such that she is distracted from adequately performing her daily activities, and that physical activity causes her to be distracted from her tasks, or causes her to abandon her tasks.  However, Plaintiff states in her Physical Activities Questionnaire that she shops, washes dishes, cooks, drives and cares for a 10- year-old, including washing his clothes, taking him to school and helping him with his homework. Additionally, Plaintiff testified at the administrative hearing that she also cares for her two-year-old child, including changing her diapers and preparing her meals.

Additionally, the December 2004 to May 2005 treatment notes of

Dr. Roberts at Bayside reflect that Plaintiff had no pain with range of motion of her hips, had negative straight leg raising, and normal sensory, motor and deep tendon reflexes of both lower extremities.  Dr. Roberts limited Plaintiff to sedentary work. (Tr. 165, 167, 171, 176, 177, 178, 180-181).  In Dr. Carter's office notes dated August 2005 to September 20, 2005, he observed that Plaintiff's straight leg raising was negative, her gait was nonantalgic, she had no foot drop, she was able to climb up and down from the exam table without difficulty, her motor exam was 5/5 for the remaining major muscle groups of the bilateral lower extremities, her sensory exam and muscle stretch reflexes were unremarkable for both lower extremities, and the remainder of her spinal range was unremarkable.  Dr. Carter limited Plaintiff to light work, with no lifting more than 20 pounds and avoiding repetitive bending and twisting at the waist, with frequent change of position. (Tr. 154-155, 162-163, 164). While Plaintiff asserts that Dr. Carter took her off work, his treatment notes reflect that when Plaintiff reported that she was not working, he suggested that she continue her "off-work" status *until* she met with the spine surgeon.  There is nothing in Dr. Carter's records which indicate that he opined that Plaintiff was disabled.  Likewise, Dr. Canale, the surgeon to whom Plaintiff was referred, did not restrict Plaintiff from working.

Dr. Canale's treatment notes dated November 14, 2005 reflect

Plaintiff's normal stance and gait, and symmetrical standing posture. Dr. Canale noted Plaintiff's chronic lower back condition and referred her to a pain specialist for a non-operative treatment regimen. (Tr. 188-189).

Additionally, Charles Crump, M.D., reviewed Plaintiff's treatment notes, and in his June 2005 Physical Residual Functional Capacity Assessment, he limited Plaintiff to medium work, lifting/carrying 50 pounds occasionally and 25 pounds frequently, standing/walking/sitting about six hours in an eight-hour workday, and unlimited pushing/pulling hand and/or foot controls. (Tr. 144-152).

Finally, in the Functional Assessment completed by Physical Therapist McCormick, he concluded that Plaintiff was able to occasionally lift 40 to 50 pounds, and could sit, stand, walk, do repetitive and sustained desk level reaching, sustained desk level reaching, floor level reaching, regular stairs, overhead reaching, kneeling, crouching, crawling and stooping on a frequent basis, assigning her an RFC of medium, as defined by the Dictionary of Occupational Titles. (Tr. 218). While Plaintiff suggests that the opinion of Plaintiff's treating physician should be accorded greater weight than that of physical therapist McCormick, simply by virtue of the fact that the treating physician is a "medical source" and the physical therapist is an "other source," such is not the case.

While a physical therapist is not considered "an acceptable medical source" pursuant to the regulations, 20 C.F.R. §§ 404.1513(a), 416.913(a), "evidence from other sources" such as physical therapists may be used to show the severity of [a claimant's] impairment(s) and how it affects [his/her] ability to" engage in work-related activities. 20 C.F.R. §§ 404.1513(d), 416.913(d). The opinions of a therapists are specifically listed as "other" medical sources who may present evidence of the severity of the claimant's impairment and the effect of the impairment on the claimant's ability to work, but cannot establish the existence of an impairment. Id. at § 404.1513(d)(1), 416.913(d)(1). See, e.g., Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004). An "ALJ is not free to disregard the opinions of health care professionals simply because they are not medical doctors". O'Connor v. Barnhart, 2004 WL 2192730, *5 (N.D. Iowa Sept. 28, 2004); See Social Security Ruling 06-03p[23], 2006 SSR LEXIS

---

[23]Additionally, Social Security Ruling 06-03p: Titles II and XVI:  Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies ("SSR 06-03p) sets forth factors to be considered in evaluating evidence from both "acceptable medical sources," and "other" medical sources:

How long the source has known and how frequently the sources has see the individual;

How consistent the opinion is with other evidence; The degree to which the source presents relevant evidence to support an opinion;

5("Opinions from....medical sources...not technically deemed 'acceptable medical sources'...are important and should be evaluated on key issues..."); See also <u>Reliford v. Barnhart</u>, 444 F. Supp. 2d 1182, 1188 (N.D. Ala. 2006)("improper and unreasonable for ALJ to reject opinions of treating physical therapist due to his not being acceptable medical source).

In light of the foregoing evidence, the undersigned finds that the ALJ did not err in rejecting the opinions of Dr. Afzal because his opinions were inconsistent with his own treatment notes, and contrary to the record evidence.   Whether the ALJ should have assigned controlling weight to the opinion of the physical therapist, Mr. McCormick, presents a different issue.

As noted supra, Mr. McCormick opined that Plaintiff could perform at the medium exertional level while two of Plaintiff's treating physicians, namely Dr. Roberts and Dr. Carter, opined that Plaintiff could perform at lower exertional levels.   Dr. Roberts placed Plaintiff at the sedentary level, and Dr. Carter placed Plaintiff at the light level.   (Tr. 162, 177).   In his decision, the ALJ discusses Dr. Roberts' medical records, but he does not

---

How well the source explains the opinion;

Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

Any other factors that tend to support or refute the opinion.

29

explain why he assigns controlling weight to Mr. McCormick's findings over those of Dr. Roberts and Dr. Carter. Generally, an ALJ commits reversible error where he fails to articulate the reason for giving less weight to the opinion of a treating physician. MacGregor v.Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004)(per curiam)(the ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" is shown to the contrary). However, such failure has been found to be harmless error when correct application of the Regulations would not contradict the ALJ's ultimate findings. Wright v. Barnhart, 153 Fed. Appx. 678 (11th Cir. 2005) (while the ALJ did not explicitly state what weight he afforded the opinions of the claimant's treating doctors, none of their opinions directly contradicted the ALJ's findings, and therefore, any error regarding their opinions was harmless.)

In this case, the ALJ determined that Plaintiff is capable of performing past relevant work as a reservation clerk, as a teacher, as a cashier, as a cooks helper and as an office clerk; thus, Plaintiff is not disabled. (Tr. 26, 27) A review of the record evidence reflects that even if the ALJ had accepted Dr. Carter's findings as controlling, and found that Plaintiff could engage in light work, with no lifting more than 20 pounds, the avoidance of repetitive bending and twisting at the waist, and the need for

30

frequent change of position, the outcome would have been the same because the VE testified that with those restrictions, Plaintiff was capable of returning to all of her past relevant jobs, except that of a cook/kitchen helper, which Plaintiff described as involving lifting up to 60 pounds[24].(Tr. 312-315).  The VE also testified that if Plaintiff's exertional level were sedentary, as found by Dr. Roberts, Plaintiff could return to her past relevant jobs of general office clerk and reservation clerk.  (Tr. 315-316). Accordingly, in light of the record evidence, which establishes that Plaintiff could perform at least two of her past relevant jobs, at the sedentary level, the undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff is not disabled.  Colon v. Astrue, 2009 U.S. Dist. LEXIS 85358 (M.D. Fla. Aug. 24, 2009) (if a person can perform the duties and meet the demands of the occupation as he practiced it in his past profession, he can be found able to return to that occupation.)(citing Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986)).

## V.    Conclusion

For the reasons set forth, and upon consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Plaintiff's claim for

---

[24]During the hearing, Plaintiff listed her various past jobs and the duties associated with each. (Tr. 312-313)

period of disability and disability income benefits and supplemental security income is **AFFIRMED.**

**DONE** this the **23ʳᵈ** day of **September, 2009.**

                              _____/s/ SONJA F. BIVINS_____
                              **UNITED STATES MAGISTRATE JUDGE**